

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMR:RAS/JOE
F. #2020R00806

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 13, 2024

By ECF

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Davis Burgos-Collazo
            Criminal Docket No. 20-492 (S-1) (PKC)

Dear Judge Chen:

      The government respectfully submits this letter in anticipation of defendant Davis Burgos-Collazo's sentencing, scheduled for June 17, 2024, at 2:30 p.m.  On July 20, 2022, the defendant, a registered sex offender, was convicted after a bifurcated trial[1] of five counts of attempting to sexually exploit a minor, in violation of 18 U.S.C. §§ 2251(a) and (e); two counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); one count of accessing with intent to view child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2); and one count of attempting to sexually exploit a minor as a registered sex offender, in violation of 18 U.S.C. § 2260A.  The defendant was acquitted of two counts of attempting to sexually exploit a minor.

      These charges, including the acquitted conduct, pertained to seven distinct victims, three of whom testified at trial.  As proven at trial, at various times in 2020, the defendant—a registered sex offender—used Instagram, to identify, contact, groom, harass and threaten vulnerable minors from all over the United States in an attempt to create sexually explicit images and videos of the minors for the defendant.  In addition, the defendant accessed and distributed sexually explicit materials of additional minors online, including sending such materials to a minor victim.

      As set forth in the Presentence Investigation Report ("PSR"), dated August 4, 2023, the defendant's total offense level under the United States Sentencing Guidelines

---

[1]     Evidence of the defendant's prior convictions for sexually abusing children relevant to the charge pursuant to 18 U.S.C. § 2260A was not disclosed to the jury until after the jury reached a verdict on the counts charging the defendant with attempting to sexually exploit minors and distribution of and access with intent to view child pornography.

("U.S.S.G." or "the Guidelines") is 45. (PSR ¶ 87). Because the total offense level under the Guidelines is capped at 43, that is the effective total offense level. (PSR ¶ 89 (citing U.S.S.G. Chapter 5, Part A (comment n.2))). Given an offense level of 43 and a Criminal History Category of V, the advisory Guidelines sentencing range is life. (PSR at ¶ 134). In addition, the defendant faces a statutory mandatory minimum of 35 years for each conviction for the attempted sexual exploitation of a minor, with a consecutive term of imprisonment of ten years for committing such offense as a registered sex offender, for a total mandatory minimum term of imprisonment of 45 years. (PSR ¶¶ 132-33).

For the reasons set forth below, including the heinous nature of the crimes of conviction and the defendant's violent and prolific history of hands-on abuse of children, the government respectfully submits that, after considering the factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a)"), the Court should sentence the defendant to a term of custody of life.

I.  Background

The evidence adduced at trial consisted of the testimony of three of the seven victims identified in the superseding indictment;[2] the testimony of multiple law enforcement officers; hundreds of pages of Instagram communications between the defendant and his victims; account information, including photographs and videos, from the various Instagram accounts used by the defendant; photographs of the defendant's minor victims; sexually explicit images of other minor children recovered from the defendant's Instagram accounts; and IP and phone records, among other evidence. The evidence established that in 2020, the defendant—who was a registered sex offender—engaged in a pattern of grooming, harassing and threatening children, some as young as 9-years-old, to manipulate or force them into creating sexually explicit images for the defendant's own sexual gratification. (PSR at ¶¶ 18-23).

---

[2] The jury acquitted the defendant of the conduct relating to two of the three testifying victims. The government respectfully submits, however, that the conduct with respect to these two victims was proved by a preponderance of the evidence and should be considered by this Court as conduct relevant to sentencing. See United States v. Watts, 519 U.S. 148, 157 (1997) ("We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); United States v. Tapia, No. 21-CR-1674, 2023 WL 2942922, at *1 (2d Cir. Apr. 14, 2023) ("Longstanding precedent establishes that a court may consider acquitted conduct to determine sentencing."). Although the U.S. Sentencing Commission recently voted to amend U.S. Sentencing Guideline § 1B1.3 to provide that relevant conduct does not include conduct for which a defendant is acquitted, that amendment will not go into effect until November 1, 2024 (assuming it is not disapproved by Congress or the President), and as such, Second Circuit caselaw still allows for consideration of that conduct. In any event, consideration of this conduct does not alter the defendant's Guidelines range, which is life, and the government respectfully submits that with or without consideration of the two counts of acquittal, the defendant should be sentenced to a term of imprisonment of life.

### A. The Investigation

As set forth in the PSR, the investigation was initiated after Instagram submitted numerous reports to the National Center for Missing and Exploited Children's ("NCMEC") Cyber Tipline, reporting multiple Instagram accounts for uploading suspected child pornography and online enticement or blackmail. (PSR ¶ 13). Several of these accounts were linked to the defendant through IP addresses or telephone numbers. (PSR ¶ 13). Throughout 2020, several magistrate judges in this district authorized the search of numerous social media accounts in connection with the defendant's accounts. (PSR ¶ 14). Ultimately, on August 28, 2020, the Honorable Cheryl L. Pollak, United States Magistrate Judge, authorized a search warrant for a search of the defendant's residence, which was executed on September 2, 2020. (PSR ¶ 15).

Certain electronic devices were seized from the defendant's residence, including an iPhone and a laptop that contained a total of 207 unique image files depicting child pornography, including images depicting the rape of a prepubescent child by an adult and a bound toddler. (PSR ¶ 16).

### B. The Offense Conduct

As established at trial and set forth in the PSR, the defendant used dozens of Instagram accounts to pursue children as young as nine years' old online in an effort to get those children to live stream themselves engaging in sexually explicit conduct. (PSR ¶ 17). If a child refused to do what the defendant demanded, he blackmailed them, threatening to send images of the child to their friends or school or expose the child in other ways in an attempt to publicly humiliate the child. (PSR ¶ 17).

Sexually explicit material was accessed using the defendant's iPhone and laptop. (PSR ¶ 16). The iPhone contained 124 unique images of child pornography and the laptop contained 83 unique images. (PSR ¶ 16). These materials involved young children, including toddlers, and was extreme even in the context of child sex abuse material, including images depicting rape of a prepubescent child by an adult and a toddler whose arms and feet were bound together. (PSR ¶ 16).

In addition to the material found on the defendant's devices, child pornography was also identified in the defendant's Instagram accounts. The defendant distributed this abusive material to other users online, including in one instance, to a minor victim. (PSR ¶ 20). Specifically, on March 12, 2020, the defendant sent Jane Doe #3, a 9-year-old-girl, a video of a minor female, approximately 10 to 12-years old, inserting a hairbrush into her vagina. (PSR ¶ 20; see also GXs 8-9).[3] The defendant sent this video to Jane Doe #3 after asking her to send him sexually explicit images of herself. (PSR ¶ 20). Notably, this type of conduct is often an attempt to desensitize a victim and entice a victim to

---

[3] "GX" refers to government trial exhibits and "Tr." refers to the trial transcript.

engage in similar conduct. (PSR ¶ 20). The defendant also sent an unknown Instagram user a video of a penis ejaculating on a prepubescent girl's face and chest. (See GXs 10, 11).

With respect to the seven charges for attempted sexual exploitation of a child—five of which are counts of conviction—the defendant utilized disturbing and threatening tactics to attempt to exploit young children.

### i. Jane Doe #1

Between March 10, 2020 and May 17, 2020, the defendant used Instagram accounts to attempt to sexually exploit Jane Doe #1, who was just 12 years old at the time. (PSR ¶ 18). The defendant told Jane Doe #1 that he loved her and told her to send him images of her vagina and buttocks without panties, describing her buttocks as "tasty." (PSR ¶ 18; see also GX 1A.1-007). The defendant asked Jane Doe #1 for a "vid call" saying he wanted to "see [her] naked body so bad." (GX 1A.1-064). He told her to "go back to the bathroom" to do a video call and stated that he was "begging" her. (GX 1A.1-067). The defendant made clear what he wanted, asking her for pictures of her in "the same position" but "without anything" on and told her to take the same picture, but "without the swea[t]er and brazier like all naked." (GX 1A.1-072). The defendant got even more explicit, writing to 12-year-old Jane Doe #1, "I want to see ur fucking pussy." (GX 1A.1-078). In between the graphic language and requests, the defendant manipulated and coerced Jane Doe #1 by telling her he loved her. (PSR ¶ 18; see, e.g., GX 1A.1-0081, -83).

### ii. Jane Doe #2

Between March 12, 2020 and April 23, 2020, the defendant used Instagram accounts to attempt to sexually exploit Jane Doe #2, who was just 10 years old at the time. (PSR ¶ 19). Jane Doe #2 testified at trial. (Tr. 526-541). She described engaging in sexual acts for the defendant via video chat after the defendant asked her to help him because he was horny, and she stated that when she no longer wanted to do that, the defendant "blackmail[ed]" her with sexually explicit images of herself that he had surreptitiously taken during their video chats. (Tr. 534-36).

Jane Doe #2's testimony is corroborated by the Instagram messages between herself and the defendant. In those messages, Jane Doe #2 pleads with the defendant to leave her alone and let her be a child. After explicit conversations, including a conversation in which the defendant directed Jane Doe #2 to "laydown and play with [her] pussy," (GX 2A-007), the chats make clear that Jane Doe #2 tried to escape the defendant's abuse. The defendant wrote, "why u keep blocking me?" and "Don't block me let's vid call and believe me u don't wanna block me." (GX 2A-009). He further wrote, "Uaneed [sic] to stop playing games u suppose to text me every other day And ask if I wanna vid call[.] Imma give u today to reply or will post the pics[.] And you've seen the pics I'm talking about." (GX 2A-010). When the defendant again threatened, "U better text me before I start posting ur pics," Jane Doe #2 begged, "I'm tired of doing this I just want to be my age 9 years old and live my life so please leave me alone." (GX 2A-011). Rather than acquiesce, the defendant further threatened and blamed Jane Doe #2, writing, "U started this u got naked first not me so don't

4

back up now and continue or I will post this and I'm following most of ur friends."[4]  (GX 2A-012).  Then, seemingly desperate, the defendant wrote, "I'm not asking u to do this every day[.]  Just ones [sic] a week that's it."  (GX 2A-012).

In short, the defendant coerced Jane Doe #2 to engage in sexually explicit conduct and then threatened and blackmailed her with sexually explicit images of herself in an effort to force Jane Doe #2 to continue after she begged the defendant to leave her alone and let her be a child.

### iii.  Jane Doe #3

Between March 12, 2020 and May 12, 2020, the defendant used Instagram accounts to attempt to sexually exploit Jane Doe #3, who was just 9 years old at the time. (PSR ¶ 20).  The defendant made explicit requests for Jane Doe #3 to engage in sexually explicit conduct, writing, "Can u help me then? Like go to the bathroom get all naked and dance[.]  I'll cum fast promise."  (GX 21-551).  The defendant also offered to buy things for Jane Doe #3 as a means of coercing her into engaging in sexual acts.  In April 2020,  Jane Doe #3 asked for an iPhone 11, and the defendant responded, "Ok babe I got u[.]  Now let me see few pics of ur body."  (GX 21-935).  When Jane Doe #3 balked at the suggestion that she had to provide pictures in exchange for the phone, the defendant responded, "Well life is about working babe[.] U work u get pay."  (GX 21-935-36).  The defendant went on to say he was joking, that he would get her the phone and that he had "already seen ur wet pussy[.] and ass and tits."  (GX 21-937; see also GX 21-087 ("And if we vid call I'll give u extra 500[.]  No wait 1000 extra[.]  Total 3,000")).

At times the defendant begged Jane Doe #3 to engage in sexually explicit conduct, (see, e.g., GX 21-081-83 ("I need to come babe[.] Plz I'm begging u[.]  This is not a joke[.]  My balls hurt[.]  I need to take my com out[.]  I can't sleep[.]  Plz Plz Plz Plz Plz"); at times he shamed and manipulated her, (see, e.g., GX 21-091 ("I need u and u can't even help me.  That's how u love me???"); GX 21-099 ("I need  help last[ night] a u didn't help. What kind of woman are u?"); GX 21-100 ("we are in a relationship. So work with my needs"); GX 21-1442-43 (reassuring Jane Doe #3 that she was pretty after she confided that she got bullied for not being pretty enough)); and at times he sent her sexually explicit material of other children (PSR ¶ 20).  His intent was always the same – to entice Jane Doe #3 to engage in sexually explicit conduct for the defendant's own sexual gratification.  The chats make clear that at times, the defendant was successful in this aim and that Jane Doe #3 did engage in sexually explicit conduct at the defendant's behest.  (See, e.g., GX 21-464 ("Cam is too close"); GX 21-570 (Jane Doe #3 asked, "How cum every time that happens you hang up[?]," to which the defendant responded, "Because I nee[d] to clean my mess," apparently referring to cleaning up after ejaculation)).

---

[4]     This is just a sampling of the defendant's numerous threats, which can be found at GX 2A.

5

iv.  Jane Does #4 and #5

The defendant was acquitted of attempting to sexually exploit Jane Does #4 and #5; however, the evidence proved by a preponderance that the defendant did make such an attempt.[5]  On March 18, 2020, the defendant used Instagram to contact Jane Does #4 and #5, who were 10 years old and 9 years old, respectively, while they were having a sleepover. (PSR ¶ 21; Tr. 466).  The defendant took a screen shot of Jane Doe #4's account pictures and posted it to his own account, refusing to take them down when Jane Doe #4 demanded he do so.  (GX 23; Tr. 467-68, 470-71).  The defendant refused to take the images down unless the victims said something inappropriate for him.  (Tr. 467-68, 470-73; see also GX 23-002 ("I'M NOT THAT SAYING BAB[E] LET ME SUCK YOUR COCK YOU NASTY PERVER[T]").  The defendant also placed a video call to the victims during which he was touching and rubbing his penis.  (PSR ¶ 21; Tr. 458).  The two victims then sent the defendant a voice message asking him to leave them alone.  (PSR ¶ 21).

v.  John Doe #1

Between April 14, 2020 and April 20, 2020, the defendant used Instagram accounts to attempt to sexually exploit John Doe #1, who was just 11 years old at the time, by posing as a 14-year-old girl.  (PSR ¶ 22).  While posing as a teenage girl, the defendant attempted to get nude photographs from John Doe #1 by writing, "imma send naked u should do the same babe."  (GX 5A-005).  When John Doe #1 did not comply, the defendant attempted to further manipulate him, writing "U not ready," (GX 5A-006), and later, "Show me u can handle me," (GX 5A-009).  When John Doe #1 repeatedly refused to send a sexually explicit image, the defendant wrote, "Ok let vid call and show me."  (GX 5A-011).  When John Doe #1 continued to not comply with the defendant's demands, the defendant threatened to "public[ly]" tell people John Doe #1 acted gay.  (GX 5A-013; see also GX 5A-020-21, -27).  As with Jane Doe #2, when the defendant did not get what he wanted from John Doe #1, the defendant resorted to threatening and blackmailing an 11-year-old child.

vi.  Jane Doe #6

Between April 23, 2020 and April 25, 2020, the defendant used Instagram accounts to attempt to sexually exploit Jane Doe #6, who was just 10 years old at the time. (PSR ¶ 23).  The defendant's chats with Jane Doe #6 are extraordinarily graphic.  (See generally GX 6A).  The defendant began by telling Jane Doe #6 that she was "sexy," asked if she was alone, and then requested a "vid call."  (GX 6A-001).  Then, while apparently on a

---

[5]  Both Jane Doe #4 and Jane Doe #5 testified.  (Tr. 452-473).  Neither victim testified that the defendant made an explicit request for sexually explicit material, but the Instagram records make the defendant's intent clear and the defendant's contact with the victims constitutes a substantial step.  Moreover, Jane Doe #5 recalled the defendant showing "his private part" in a video call with the victims and testified that he "was rubbing his penis." (Tr. 458).  Jane Doe #4 recalled that the defendant posted photographs of her to his Instagram accounts and refused to take them down unless the victims said "something" that Jane Doe #4 was too uncomfortable to repeat.  (Tr. 467-68, 470-73).

6

video call, the defendant directed Jane Doe #6 to show her face, telling her that if she did not show her face it means she did not like it. (GX 6A-005). After, the defendant confirmed that they would meet again at the same time the following day. (GX 6A-007). The next day, the defendant told Jane Doe #6 that "today is [different]" because she should show her whole face and "get naked." (GX 6A-008). Based on the conversation, it is apparent that the defendant subsequently engaged in a video chat with Jane Doe #6 during which Jane Doe #6 engaged in sexually explicit conduct. (See, e.g., GX 6A-011 ("Bring cam back more wanna see more of u[.] Stand up Turn around wanna see ur but[.] Bring cam down."); GX 6A-012 ("stay in panty[.] Plz take it off some[.] More down and twerk babe[.] Doggystyle Ass to cam[.] Too close[.] Wanna see ur ass and [Pussy][.]); GX 6A-014 ("Ass and pussy to cam and spread[.] Babe onDoggy [sic.] All off[.]")).

        C. The Defendant's Arrest and Prior Convictions

The defendant was arrested on October 26, 2020. (PSR Addendum ¶ 24). On October 30, 2020, a grand jury sitting in the Eastern District of New York returned a three count indictment charging the defendant with two counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) and one count of accessing with intent to view child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (ECF No. 6). On March 3, 2021, a grand jury sitting in the Eastern District of New York returned an eleven-count indictment, adding seven counts of attempting to sexually exploit a minor, in violation of 18 U.S.C. §§ 2251(a) and (e) and one count of attempting to sexually exploit a minor as a registered sex offender, in violation of 18 U.S.C. § 2260A. (ECF No. 11). Jury selection commenced on July 13, 2022, followed immediately by trial. Three of the seven victims identified in the superseding indictment—Jane Does #2, 4, and 5—testified at trial. The government also presented to the jury, among other evidence, the defendant's chats with all seven victims. On July 19, 2022, the jury returned a verdict convicting the defendant of five counts of attempting to sexually exploit a minor, two counts of distribution of child pornography, one count of accessing with intent to view child pornography, and one count of attempting to sexually exploit a minor as a registered sex offender. (ECF No. 62). The jury acquitted on two counts of attempting to sexually exploit a minor in connection with Jane Does #4 and #5. (ECF No. 62).

Notably, prior to the offense conduct before this Court, the defendant had an extensive history of hands-on sexually abusing prepubescent minors. On March 30, 2006, the defendant was convicted in the Bronx County Supreme Court of Attempted Criminal Sexual Act in the First Degree: Victim Less Than 11 Years Old, in violation of New York Penal Law ("NYPL") § 110-130.50(03) and Sexual Abuse in the First degree: Sexual Contact with an Individual Less Than 11 Years Old, in violation of NYPL § 130.65(03). (PSR ¶ 25). He was sentenced on April 19, 2006 to 42 months' imprisonment followed by five years of supervised release and was designated a New York State Tier III sexually violent offender, required to register as a sex offender for life. (PSR ¶ 25). In addition, on March 30, 2006, the defendant was convicted in the Bronx County Supreme Court of Attempted Criminal Sexual Act in the First Degree: Victim Less Than 11 Years Old, in violation of NYPL § 110-30.50(03) for a separate incident. (PSR ¶ 25). He was sentenced

on April 19, 2006, to an additional four years' imprisonment followed by five years of supervised release.  (PSR ¶ 25).

    II.    <u>Guidelines Calculation</u>

The government agrees with the Guidelines calculation set forth by the United States Probation Department ("Probation") in the PSR, which calculation is reflected below:

<u>Counts 1, 2, and 3 (Count Group 1) (Distribution and Accessing Child Pornography)</u>

| | |
|---|---:|
| Base Offense Level (§ 2G2.2(a)(2)) | 22 |
| Plus:  minor at less than 12 years old (§ 2G2.2(b)(2)) | +2 |
| Plus:  defendant knowingly engaged in distribution (§ 2G2.2(b)(3)(F)) | +2 |
| Plus:  offense involved sexual abuse of infant or toddler (§ 2G2.2(b)(4)(B)) | +4 |
| Plus:  defendant engaged in a pattern of activity (§ 2G2.2(b)(5)) | +5 |
| Plus:  computer was used (§ 2G2.2(b)(6)) | +2 |
| Plus:  offense involved at least 150 and fewer than 300 images (§ 2G2.2(b)(7)(B)) | +3 |
| Total: | 40 |

<u>Count 4 (Attempted Sexual Exploitation of Jane Doe #1)</u>

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus:  offense involved minor who attained age of 12, but not age of 16 years old (§ 2G2.1(b)(1)(B)) | +2 |
| Plus:  offense involved use of a computer (§ 2G2.1(b)(6)(B)) | +2 |
| Total: | 36 |

<u>Count 5 (Attempted Sexual Exploitation of Jane Doe #2)</u>

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus:  offense involved minor who had not attained the age of 12 (§ 2G2.1(b)(1)(A)) | +4 |
| Plus:  offense involved use of a computer (§ 2G2.1(b)(6)(B)) | +2 |

| | |
|---|---:|
| Total: | <u>38</u> |

Count 6 (Attempted Sexual Exploitation of Jane Doe #3)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus:  offense involved minor who had not attained the age of 12 (§ 2G2.1(b)(1)(A)) | +4 |
| Plus: offense involved distribution of child pornography (2G2.1(b)(3)) | +2 |
| Plus:  offense involved use of a computer (§ 2G2.1(b)(6)(B)) | <u>+2</u> |
| Total: | <u>40</u> |

Count 9 (Attempted Sexual Exploitation of John Doe #1)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus:  offense involved minor who had not attained the age of 12 (§ 2G2.1(b)(1)(A)) | +4 |
| Plus:  offense involved use of a computer (§ 2G2.1(b)(6)(B)) | <u>+2</u> |
| Total: | <u>38</u> |

Count 10 (Attempted Sexual Exploitation of Jane Doe #6)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus:  offense involved minor who had not attained the age of 12 (§ 2G2.1(b)(1)(A)) | +4 |
| Plus:  offense involved use of a computer (§ 2G2.1(b)(6)(B)) | <u>+2</u> |
| Total: | <u>38</u> |

Count 11 (Offense by Registered Sex Offender): statutorily required 10 year consecutive term.  (§ 2A3.6)

| | |
|---|---:|
| Greater of the Adjusted Offense Levels Above: | 40 |

9

Multiple Count Adjustment (§ 3D1.4):

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count Group 1 | 40 | 1.0 |
| Count Group 4 | 36 | 1.0 |
| Count Group 5 | 38 | 1.0 |
| Count Group 6 | 40 | 1.0 |
| Count Group 9 | 38 | 1.0 |
| Count Group 10 | 38 | 1.0 |

Total Increase Based on Multiple Count Adjustment: +5

Total 45

**Final Total Offense Level**:[6] **43**

(PSR at ¶¶ 35-89).

Given this offense level and a Criminal History Category of V, the applicable Guidelines range is life imprisonment. The defendant is also subject to a statutory mandatory minimum of 35 years for each conviction for the attempted sexual exploitation of a minor, with a consecutive term of imprisonment of ten years for committing such offense as a registered sex offender, for a total mandatory minimum term of imprisonment of 45 years.[7] (PSR ¶¶ 132-33).

    III.    The Defendant Should Be Sentenced to Life in Prison

For the reasons set forth below, the government respectfully submits that the defendant should be sentenced to a term of life.

---

[6] Pursuant to Chapter 5, Part A (comment n.2), where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43.

[7] The defendant disputes the applicability of this mandatory minimum in his February 27, 2024 PSR objection letter to probation. (ECF No. 73). The government's position is set forth in detail in its response to the defendant's PSR objections. (ECF No. 75).

A. <u>Legal Standard</u>

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines were no longer mandatory, but should be considered in conjunction with the factors outlined in § 3553(a). Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but <u>Booker</u> allows the court to "tailor the sentence in light of other statutory concerns[.]" <u>Kimbrough v. United States</u>, 552 U.S. 85, 101 (2007) (citing <u>Booker</u>, 543 U.S. at 245-46 and <u>Gall v. United States</u>, 552 U.S. 38, 46-49 (2007)). However, the Supreme Court explained that even though the Guidelines are now advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence. <u>Kimbrough</u>, 552 U.S. at 108 (citing <u>Gall</u>, 552 U.S. at 50 and <u>Rita v. United States</u>, 168 L. Ed. 203, 213 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). <u>Id.</u> That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; and

(2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §§ 3553(a)(1) and (2).

As set forth below, in connection with the analysis of the § 3553(a) factors, the nature and circumstances of the offense and the defendant's history in conjunction with the need to deter both the defendant and others from engaging in the destructive conduct such as that here, which targeted the most vulnerable members of the community, overwhelmingly weighs in favor of a life sentence for this particular defendant.

B. <u>Analysis</u>

The defendant is a prolific predator who has spent his adult life abusing children both in person and online. In a context of an already horrific crime, the defendant's conduct stands apart as among the most egregious imaginable. After physically raping or abusing multiple children under the age of 11 (PSR ¶ 25), the defendant not only coerced children as young as 9 years old to engage in sexually explicit conduct for his own gratification, but, when they refused, he threatened and blackmailed them in an effort to force them to continue to do so. The defendant's communications with his minor victims are

11

extraordinarily graphic and disturbing. They reflect the serious nature of his crimes, the masterful manipulation techniques he honed over time, and the lengths he is willing to go to get what he wants from children no matter the cost to the child's mental well-being or physical safety.

        The defendant's history and characteristics also demonstrate that he is a man who cannot be stopped from abusing children other than by imprisonment. In 2006, the defendant was sentenced to a total of seven-and-one-half years for two separate offenses relating to the sexual abuse of children. Based on NYPD records, the first offense involved three separate minor victims under the age of 11. (PSR ¶ 92). Specifically, in July and August 2004, the defendant placed his penis on Victim-1's anus and vaginally and orally raped her, among other things. (PSR ¶ 92). Victim-1 was 10 years old. (PSR ¶ 92). During that same time period, the defendant orally and vaginally raped Victim-2. (PSR ¶ 92). Victim-2 was 8 years old. (PSR ¶ 92). Finally, in August 2004, the defendant placed Victim-3's hand on his penis. (PSR ¶ 92). Victim-3 was 8 years old. (PSR ¶ 92). The defendant was arrested for this conduct on August 19, 2004. Following this arrest, and before he was sentenced for those crimes, the defendant again sexually abused a prepubescent minor. On March 6, 2006, according to NYPD records, the defendant rubbed his penis on Victim-4's vagina, placed his mouth on her vagina, and touched her vagina with his hand. Victim-4 was 7 years old. (PSR ¶ 93). In other words, despite having been arrested for raping or sexually abusing three prepubescent minors and not having yet been sentenced for those crimes, the defendant remained undeterred from sexually abusing yet another child. Similarly, despite being sentenced to over seven years in prison for those crimes and being registered as a sex offender for life, the defendant was again undeterred from engaging in prolific online abuse of the minor victims in this case. This history weighs heavily in favor of a Guidelines sentence of life.

        Further, the need for the sentence imposed to promote respect for the law, provide just punishment to the defendant and promote general and specific deterrence likewise supports a life sentence. Here, the defendant used an intricate network of dozens of Instagram accounts, a social media application frequented by minors, to gain access to children and child exploitation material. Today, there are countless applications that can and are used by pedophiles to engage in the very same crimes as those committed by the defendant. The pool of vulnerable minors on these applications grows larger everyday as children increasingly access and use the internet. Indeed, in a report published in 2021, the United States Sentencing Commission observed that "a growing proportion of production offenders exploit victims remotely through the use of the internet and mobile devices."[8]

---

[8]     United States Sentencing Commission (2021), Federal Sentencing of Child Pornography: Production Offenses, at 1, 35, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (the "Child Pornography Production Report") ("For example, over one-third (35.4%) of production offenders sentenced in fiscal year 2019 were internet strangers who met their victims through an online platform, more than double the proportion of offenders sentenced in fiscal year 2010 who met their victims online (14.3%)).

According to the same report, "the expansion of digital and mobile technology has contributed to a 422 percent increase in the number of production offenders sentenced over a 15-year period, from 98 offenders in fiscal year 2005 to 512 offenders in fiscal year 2019." Id. at 3.  In light of the increasing frequency at which these crimes are being committed, it is important for the public to be aware that predators like the defendant seek out victims in this arena, and for people like the defendant to understand that their crimes—which are just as harmful as hands-on sexual offenses—will be punished commensurate with their seriousness. Thus, a lengthy sentence in this case would send a strong message to those who seek to sexually exploit children online, that the courts will not tolerate the sexual abuse of children and that the consequences for such criminal conduct will be significant.

IV.     Conclusion

For the reasons set forth herein, and to protect the public from further crimes by this defendant, the government respectfully submits that a sentence of life imprisonment is appropriate in this case.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    _____/s/_____
Rachel A. Shanies
John O. Enright
Assistant U.S. Attorneys
(718) 254-6140/(718) 254-6203

cc:    Clerk of the Court (PKC) (by ECF)
       Counsel for the defendant (by ECF)
       Erica T. Vest, Probation Department (by email)